No. 23-10657-H

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

SHANTERIA B. COOKS,

Appellee,

v.

OFFICER BRIAN KREMLER,

Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT TO FLORIDA
TAMPA DIVISION
CASE NO. 8:19-cv-2570-MSS-SPF

SHANTERIA B. COOKS
APPELLEE'S BRIEF

MICHAEL P. MADDUX, ESQUIRE
Florida Bar No: 964212
Attorney for Appellee
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 33606
Phone: 813-253-3363
Fax: 813-253-2553
Email: mmaddux@madduxattorneys.com

## <u>APPELLEE'S CERTIFICATE OF INTERESTED PERSONS</u>
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Appellee, SHANTERIA B. COOKS, by and through the undersigned Counsel, hereby discloses the following pursuant to this Court's interested persons order:

1. City of Tampa

2. Cooks, Shanteria

3. Dayes, Drew

4. Flynn, Sean

5. Kremler, Brian

6. Lirot, Luke

7. Maddux, Michael

8. Oropesa, Haydee

9. Richardson, Ursula

10. Scriven, Mary

11. Szymczak, Jennifer

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee, Shanteria Cooks, pursuant to the Federal Rules of Appellate Procedure 34(a), requests oral argument. This appeal presents questions involving numerous facts and significant legal issues with substantial public impact regarding excessive force claims. Oral argument would assist the Court in addressing these issues.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT……………………………………………C1-1

STATEMENT REGARDING ORAL ARGUMENT………………………………i

TABLE OF CITATIONS.........................................................................................iv

STATEMENT OF THE CASE……………………………………………..1

  A. Statement of the Facts……………………………………………………1

SUMMARY OF ARGUMENT………………………………………………4

ARGUMENT AND CITATIONS OF AUTHORITY……………………………..6

     I.      THE COURT LACKS JURISDICTION TO REVIEW THE
            DENIAL OF SUMMARY JUDGMENT BASED ON
            QUALIFIED IMMUNITY…………………………………...………6

     II.     MATERIAL DISPUTED FACTS EXIST WHICH
            PRECLUDE SUMMARY JUDGMENT…………………...……..11

           a. Disputes Exist Whether Officer Kremler Intentionally
               Struck Mr. Weems…………………………………………….14

           b. Disputes Exist Concerning What Information Was
               Known to Officer Kremler Prior to the Collision About
               the Severity of the Crime Mr. Weems was Suspected to
               have Committed………………………………………..…………17

           c. Disputes Exist Whether Mr. Weems Posed a Threat of
               Death or Serious Bodily Injury……………………..………18

ii

III.    OFFICER KREMLER IS NOT ENTITLED TO
        QUALIFIED IMMUNITY……………………………………………..19

        a.  Officer Kremler Violated Mr. Weems' Constitutional
            Rights…………………………………………………………………..21

                i.  Severity of the Crime………………………………...…………22

                ii.  Threat…………………………………………………...…………24

                iii.  Resisting or Evading Arrest………………………………….26

        b.  The Illegality of Officer Kremler's Actions Was
            "Clearly Established" at the time of the Incident………....………28

IV.     OFFICER KREMLER IS LIABLE FOR THE WRONGFUL
        DEATH OF MR. WEEMS UNDER STATE LAW……………..…..39

CONCLUSION…………………………………………………………..…..41

CERTIFICATE OF COMPLIANCE………………………………………...42

CERTIFICATE OF SERVICE…………………………………..……………..43

## **TABLE OF CITATIONS**

**Cases**                                                                **Page**

*Alvarez v. Royal Atl. Devs., Inc.*
610 F.3d 1253 (11th Cir. 2010)…………………………………………...………….12

*Anderson v. Creighton*
483 U.S. 635 (1987)……………………………………………...………….29

*Anderson v. Liberty Lobby, Inc*.
477 U. S. 242 (1986)……………………………………………...………...12

*Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau*
835 F.2d 855 (11th Cir. 1988)……………………………………..………..13-14

*Ayers v. Harrison*
650 F.App'x 709 (11thCir 2016)…………………………...…………………..31

*Bashir v. Rockdale Cnty.*
445 F.3d 1323 (11th Cir. 2006)……………………………...………………………22

*Butler v. Gualtieri*
41 F.4th 1329 (11th Cir. 2022)……………………………...…………11-12

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)…………………………………………………………12

*City of Miami v. Sanders*
672 So.2d 46 (Fla. 3rd DCA 1996)………………………………….……………39

*Corbitt v. Vickers*
929 F.3d 1304 (11th Cir. 2019)……………………………………….………..30

*Corley v. Long-Lewis, Inc.*
965 F.3d 1222 (11th Cir. 2020)…………………………………………...………..6

*Cottrell v. Caldwell*
85 F.3d 1480 (11th Cir. 1996)……………………………………………….……..7

iv

*Crenshaw v. Lister*
556 F.3d 1283 (11th Cir. 2009)……………………………….………………………..22

*Crosby v. Paulk*
187 F.3d 1339 (11th Cir. 1999)……………………………...…………….………21

*Diane Hope v. Taylor*
No. 8:20-CV-196-VMC-AAS, 2021 WL 694177 (M.D. Fla., 2021)…………13-14

*Edwards v. Shanley*
2012 U.S. App. LEXIS 640 (11th Cir. 2012)…………………..……………..13, 22

*English v. City of Gainesville*
No. 22-10927, 2023 WL 4782733 (11th Cir. July 27, 2023)……………...4, 6, 7-11

*Ex parte McCardle*
74 U.S. 506 (1869)…………………………………………………………………6

*Fils v. City of Aventura*
647 F.3d 1272 (11th Cir. 2011)……………………………………...………30-31

*Gaillard v. Commins*
562 F. App'x 870 (11th Cir. 2014)………………………………………….32-33

*Gilmere v. City of Atlanta*
774 F.2d 1495 (11th Cir. 1985)……………………………………….………..31-32

*Graham v. Connor*
490 U.S. 386 (1989)………………………………………5, 19-20, 21, 27, 36-37

*Harlow v. Fitzgerald*
457 U.S. 800 (1982)………………………………………………..……20, 29

*Haynes v. Richmond Cty. Sheriff Off.*
749 F. App'x 935 (11th Cir. 2018)……………………………………...…..37-39

*Holloman ex rel. Holloman v. Harland*
370 F.3d 1252 (11th Cir. 2004)……………………………………………30

v

*Hope v. Pelzer*
536 U.S. 730 (2002)…………………………………………...…………..28-29, 30

*Hunt v. Cromartie*
526 U.S. 541 (1999)…………………………………………………………13

*Johnson v. Jones*
515 U.S. 304 (1995)…………………………………….………………….7, 8

*Jones v. City of Columbus, Ga*
120 F.3d 248 (11th Cir. 1997)…………………….…………….....……12

*Lee v. Ferraro*
284 F.3d 1188 (11th Cir. 2002)……………………...…………...21-22, 29, 30

*Lundgren v. McDaniel*
814 F.2d 600 (11th Cir. 1987)…………………………………………...31

*Marsh v. Butler County*
268 F.3d 1014 (11th Cir.  2001)……………………….………………29

*McCullough v. Antolini*
559 F.3d 1201 (11th Cir. 2009)…………………………...…………..20, 26

*McKinney v. DeKalb Cty., Ga.*
997 F.2d 1440 (11th Cir. 1993)……………………...…………31

*Mercado v. City of Orlando*
407 F.3d 1152 (11th Cir. 2005) …………………………...………29, 36-37

*Mighty v. Miami-Dade Cty.*
728 F. App'x 974 (11th Cir. 2018)………………………….……….30-31

*Mitchell v. Forsyth*
472 U.S. 511 (1985)………………………………………..………………7

*Oliver v. Fiorino*
586 F.3d 898 (11th Cir. 2009)……………………….……………...20

vi

*Pearson v. Callahan*
129 S. Ct. 808 (2009)……………………………………………...…………20

*Penley v. Eslinger*
605 F.3d 843 (11th Cir.2010)……………………………………….……..21

*Pourmoghani–Esfahani v. Gee*
625 F.3d 1313 (11th Cir.2010)……………………………………………15

*Rozzelle v. Sec'y, Fla. Dep't of Corr.*
672 F.3d 1000 (11th Cir. 2012)…………………...………………………14

*Salvato v. Miley*
790 F.3d 1286 (11th Cir. 2015)…………………………………………21-22, 31

*Samples ex rel. Samples v. City of Atlanta*
846 F.2d 1328 (11th Cir. 1988)………………………………………..13-14

*Scott v. Harris*
550 U.S. 372 (2007)…………………………………………………....15, 21, 26

*Sorrels v. NCL (Bahamas) Ltd.*
796 F.3d 1275 (11th Cir. 2015)………………………….……………..11-12

*State v. Stenza*
453 So.2d 169 (Fla. 2d DCA 1984)…………………………………………14

*Steel Co. v. Citizens for a Better Env't*
523 U.S. 83 (1998)……………………………………………………….6

*Stephens v. DeGiovanni*
852 F.3d 1298 (11th Cir. 2017)…………………….…………………..26

*Strickland v. Norfolk S. Ry. Co.*
692 F.3d 1151 (11th Cir. 2012)…………………………………………12-13, 19

*Tennessee v. Garner*
471 U.S. 1 (1985)…………………………….………..5-6, 30-31, 32-34, 37-38, 39

vii

*Tolan v. Cotton*
134 S. Ct. 1861 (U.S. 2014)…………………………………………….……..…..12

*United States v. Lanier*
520 US. 259 (1997)……………………………………………….……28, 29-30

*Vaughan v. Cox*
343 F.3d 1323 (11th Cir. 2003)…………………………………………30, 34-35

*Vinyard v. Wilson*
311 F.3d 1340 (11th Cir. 2002)……………………………………..…..21

*Weiland v. Palm Beach County Sheriff's Office*
792 F.3d 1313 (11th Cir. Fla. 2015)……………………….…………..35-36

## **Statutes**

42 *U.S.C. §* 1983……………………………………………….…………34-35, 39

*Fla. Stat. §* 768.28…………………………………….………………..39

## **Rules**

Fed.R.App.P. 34(a)……………………………………………………….i

Fed.R.Civ.P. 56(c)………………………………………………….5

## STATEMENT OF THE CASE

### A. Statement of the Facts

On October 20, 2017, Dusharn Weems was driving an Infiniti G35 on 30th Street in Tampa, Florida. (Doc 41 at ¶ 4) While on patrol on 30th Street, Officer Juan Hernandez conducted a tag query on the license plate of the vehicle operated by Weems, which identified the vehicle as stolen. *Id.* at ¶ 5. Weems turned into a Family Dollar store, which is located north of Busch Boulevard on 30th Street, and Officer Hernandez and Officer Jennifer Salsbury followed the vehicle into the parking lot. *Id.* at ¶ 6. As he followed Weems into the parking lot, Officer Hernandez activated his emergency lights and chirped his sirens to alert Weems that he was conducting a traffic stop. *Id.* at ¶ 8.

Weems stopped his vehicle, opened the door and then shut the door. (Doc 36-3, 29:1-10). Weems vehicle then went in reverse, making contact with Officer Hernandez's car. *Id.* Mr. Weems then left the parking lot in the vehicle. *Id.* Officer Hernandez testified that he did not think Weems hit his vehicle with the intention to hurt him and stated that he did not think there was any damage to his vehicle, or if there was, it was "very, very minor." (Doc 36-3 at 32:14–16, 33:5- 9) Officer Hernandez drove on 30th Street to catch up to Weems before he began a foot pursuit. (Doc 41 at ¶ 15)

1

Weems exited the Family Dollar parking lot driving the Infinity and heading southbound on 30th Street toward Busch Boulevard. *Id.* at ¶ 13. As Weems approached the intersection of 30th Street and Busch Boulevard his vehicle become blocked in between other traffic. *Id.* at ¶ 14. At this point, Weems abandoned the Infiniti and began to run on foot. *Id*. Weems was wearing a white tank top and jean pants. (Doc 37)

When Weems first drove away from the traffic stop, Appellant, Officer Kremler, was located in a parking lot on Busch Boulevard, somewhere near 22nd or 24th Street, reviewing and responding to emails. *Id.* at ¶ 16. Having heard a call for information come in from Officer Hernandez, Officer Kremler attempted to assist him by responding. *Id.* at ¶ 17. Using his police cruiser's computer, Officer Kremler accessed the FCIC/NCIC system for information related to the stolen Infiniti Weems was driving. *Id.* at ¶ 18.

There is a material dispute of fact about what information in this report was seen by Officer Kremler prior to his engagement in the chase. First, Officer Kremler testified that he had the following information prior to contact with Mr. Weems, "MKE[1]/stolen vehicle, occupant's armed/hold for latents." (Doc 36-1, 42-43:17-7) However, Officer Kremler did not advise the other officers of this

---

[1] MKE stands for Message Key Entry

additional information prior to contact with Mr. Weems. (Doc 36-1, 44-45:20-6) Later, Officer Kremler testified that at the time he was driving in the parking lot after Mr. Weems, he didn't think he knew that the crime the vehicle was previously linked to was a home invasion robbery, he just knew that it was a robbery of some kind on the hit from NCIC and FCIC. (Doc 36-1, 75-76:16-8)

Officer Kremler called out on the radio that the Infiniti was a Signal 10 (stolen vehicle). He then proceeded on Busch Boulevard in the direction of its intersection with 30th Street. (Doc 41 at ¶ 19)

Officer Kremler subsequently learned about the contact between Weems' and Officer Hernandez's vehicle. (Doc 36 at 5)

Officer Kremler first saw Weems running on foot in a westbound direction just north of Busch Boulevard and 30th Street. (Doc 41 at ¶ 21) With his emergency lights already activated, Officer Kremler activated his siren and made an abrupt U-turn on Busch Boulevard at its intersection with 30th Street. *Id.* at ¶ 22. Officer Kremler's cruiser sped into the parking lot that was in Weems' path and collided with Weems. (Officer Kremler's Dash Camera Video, Doc 37) Weems was thrown to the pavement by the impact, his arm was pinned beneath the front right tire of the cruiser, and his skull struck the ground. (Doc 41 at ¶ 27; Doc

36-1 at 74:13–21) The incident is caught on Officer Kremler's in car dash camera which is a part of the record. (Doc 37)

Officer Kremler contends that he was "slowing to a stop at the time of the impact." (Doc 36 at 8) However, the video depicts no material change in speed prior to the impact. (Doc 37) In the approximate 8 seconds from the time Weems is first seen on the video until he has been hit and Officer Kremler's car has stopped, the GPS-based speed changes four times. *Id.* Kremler's speed is first captured at 12 mph, then 17 mph, then 14 mph, and finally at 0 mph. *Id.*

A voice that a reasonable jury could conclude is Officer Kremler's can be heard on the dashboard camera video moments after the collision stating: "Well you ain't going anywhere." (Doc 37 at 20:28:13) Officer Kremler did not rush to provide immediate aid to Weems. *Id.* Weems died from his injuries several days later on October 24, 2017. (Doc 41 at ¶¶ 26, 27)

## **SUMMARY OF ARGUMENT**

The District Court properly denied Summary Judgment in favor of Officer Brian Kremler with regards to the excessive force claim.

This Court lacks jurisdiction because the appeal presents only questions of fact and not law. *English v. City of Gainesville*, No. 22-10927, 2023 WL 4782733, at *2–3 (11th Cir. July 27, 2023) The parties do not dispute the clearly established

law, instead the parties dispute whether Dusharn Weems posed a danger as he ran through the parking lot.

Even if the Court accepts jurisdiction, material disputed facts exist which preclude Summary judgment. Fed.R.Civ.P. 56(c). Specifically, disputes exist concerning, 1) whether Officer Kremler intentionally struck Mr. Weems with his vehicle, 2) what information was known to Officer Kremler prior to the collision about the severity of the crime Mr. Weems was suspected to have committed, and 3) whether Mr. Weems posed a threat of death or serious bodily injury.

Next, Officer Kremler is not entitled to Qualified Immunity because Officer Kremler violated Mr. Weems' clearly established Constitutional Rights. In addressing the *Graham* factors, it is clear the amount of force was unnecessary and excessive. Viewing the facts in the light most favorable to the Appellee, at the time of the contact, all Officer Kremler knew was that he was joining the chase of an unarmed individual who had been previously driving in a stolen vehicle. The use of deadly force to seize Mr. Weems by striking him with a vehicle (driving approximately 17 miles per hour, when viewed in the light most favorable to the Appellee) in those circumstances could be found by a reasonable jury to have been objectively unreasonable and excessive.

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court explicitly addressed "the constitutionality of the use of deadly force to prevent the escape of

an apparently unarmed suspected felon" fleeing on foot. *Id.* at 3. The Court clearly established that an officer cannot, without the requisite threat of immediate harm, use deadly force against an unarmed robbery suspect fleeing from law enforcement solely to prevent flight. *Id.* at 11. It would have been clear to a reasonable officer in Officer Kremler's position that deadly force was not available to prevent Mr. Weems from flight and therefore qualified immunity is not applicable.

As such, the District Court properly denied Summary Judgment in favor of Officer Brian Kremler with regards to the excessive force claim.

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

## I.    THE COURT LACKS JURISDICTION TO REVIEW THE DENIAL OF SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

The threshold obligation of this Court is to ensure the Court has jurisdiction to hear an appeal, for without jurisdiction the Court cannot proceed at all in any cause. *English v. City of Gainesville*, No. 22-10927, 2 (11th Cir. July 27, 2023) citing *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (alterations adopted) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)). "[A]djudicating an appeal without jurisdiction would 'offend fundamental principles of separation of powers." *Id.* (alteration adopted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, (1998)).

Whether the Court has interlocutory jurisdiction to review the denial of summary judgment on qualified immunity grounds depends on the type of issues involved in the appeal. *English* citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). An appeal may raise "legal issues," such as "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Id.* The Court has interlocutory jurisdiction over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds. *Id.*; *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). But an appeal may also raise issues of "evidentiary sufficiency." *Cottrell*, 85 F.3d at 1484. Such issues arise when the Court is asked to determine "whether the district court erred in determining that there was an issue of fact for trial about the defendant's actions or inactions which, if they occurred, would violate clearly established law." *Id.* This Court lacks interlocutory jurisdiction "where the only issues appealed are evidentiary sufficiency issues." *Id.*; *see Johnson v. Jones*, 515 U.S. 304, 313, (1995) (explaining that a district court's determination that the summary judgment record raised a genuine issue of fact concerning defendants' actions is not an appealable decision).

The Eleventh Circuit Court in *English v. City of Gainesville*, No. 22-10927 (11th Cir. July 27, 2023) concluded the only issues in that appeal were issues of evidentiary sufficiency. The Court reasoned the officers in their motions for

summary judgment argued that their use of force was reasonable under the circumstances because they encountered a suspect who had brandished a gun, discharged it at least once, and ignored their commands to show his hands. The officers argued that in the light of these facts, when they saw English move, they had actual and probable cause to use deadly force on him. But the district court determined that "viewing the evidence and the videos in the light most favorable to Plaintiffs," a reasonable jury could find that the officers' use of force was unreasonable. It reasoned that "though the officers say that they saw [English] make a quick motion as if to reach for a gun ... the videos leave that conclusion up for interpretation." The district court ruled against the officers because of a genuine dispute of material fact. The Eleventh Circuit Court held this is the type of ruling that the Court lacks jurisdiction to review. *Id. See Johnson*, 515 U.S. at 313, 115 (1995).

Further, the district court in *English* also considered the officers' argument that English's constitutional right to be free from excessive force in these circumstances was not clearly established. The district court explained that deadly force is justified only where a reasonable officer would believe that the suspect "posed an *immediate* threat of serious physical harm." The officers argued that English in fact posed an immediate threat.

Again, the district court ruled against the officers because of a genuine dispute of material fact. It determined that "[u]nder Plaintiffs' version of the facts, these circumstances did not exist: the video evidence showed that Mr. English was not fleeing ... or resisting ... [or] threatening the officers, himself, or anyone else." In other words, upon reviewing the evidence, "a reasonable jury could view the sequence of events differently than [the officers] said they did." Ultimately, the dispute was about what the evidence could prove at trial; it was not a dispute about principles of law.

The Court noted that while the officers tried to cast their arguments as legal disputes, the appeal did not raise questions about whether certain undisputed conduct violated the Fourth Amendment or whether the law was clearly established. The parties agree that the use of deadly force against a non-resisting suspect who *poses no danger* violates a suspect's Fourth Amendment right to be free from excessive force. The dispute instead was whether English—in fact— posed a danger when the shooting occurred. In other words, the only issues in this appeal concern what happened at the scene. Those are questions of fact, not law. *Eng. v. City of Gainesville*, No. 22-10927, 2023 WL 4782733, at *2–3 (11th Cir. July 27, 2023)

Like *English*, Appellant also only raises questions of fact and therefore this Court lacks jurisdiction. Appellant begins his brief with that very issue, arguing the

District Court improperly weighed the testimony of Kremler and made unreasonable inferences. (Appellant Brief at 12) Specifically, Appellant argues the district court erred when it determined that the record evidence would allow a reasonable jury to find that "(1) Officer Kremler intentionally used deadly force when he struck Weems with his car in order to end the foot chase and (2) the use of force was unreasonable and excessive because Weems was unarmed, there was no basis to believe Weems otherwise posed a threat of serious physical harm to Kremler or others, and Officer Kremler gave no warning prior to applying deadly force[]" because the cited inferences were unreasonably drawn by the district court. *Id.*

Like the district court in *English*, the District Court here reasoned that viewing the evidence in the light most favorable to the Plaintiff, which includes the dashboard camera video footage of the collision taken from Officer Kremler's vehicle, a reasonable jury could determine that Officer Kremler intentionally struck Weems with his vehicle for the purpose of seizing him. (Doc 49, p. 9)

Further, similar to the district court in *English*, the District Court here found there were material disputed facts concerning what information was known to Officer Kremler prior to the collision about the severity of the crime Weems was suspected to have committed. (Doc 49, p. 12) The Court also found there are issues of fact concerning whether Officer Kremler had any objectively reasonable basis to

believe that Weems posed a serious physical threat to others. (Doc 49, p. 14) The District Court held, viewing this evidence in the light most favorable to Weems, a jury could determine that no reasonable officer in Kremler's position could have perceived the object in Weems' hand to have been a firearm. A reasonable jury could conclude that the object to all reasonable observers appeared to be what it was— a bag. (Doc 49, p. 17) Absent any knowledge or basis to believe that Weems was armed or otherwise dangerous, there is no reasonable basis for Officer Kremler to have believed Weems' flight posed an immediate, serious, physical threat to Officer Kremler or the community at large such that lethal force was warranted. (Doc 49, p. 17-18)

Like *English*, the parties do not dispute the clearly established law, instead the parties dispute whether Dusharn Weems posed a danger as he ran through the parking lot. Those are questions of fact, not law. *Eng. v. City of Gainesville*, No. 22-10927, 2023 WL 4782733, at *2–3 (11th Cir. July 27, 2023) Therefore this Court lacks jurisdiction and the appeal should be denied.

## II.  MATERIAL DISPUTED FACTS EXIST WHICH PRECLUDE SUMMARY JUDGMENT

Even if this Court accepts jurisdiction, the Court should affirm the District Court's denial of Summary Judgment. Summary judgment is warranted only when, "after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material facts exist and the moving party is

entitled to judgment as a matter of law." *Butler v. Gualtieri*, 41 F.4th 1329, 1334 (11th Cir. 2022) citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010)). At summary judgment, the key issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Butler* at 1334; citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Officer Kremler carries the burden of establishing the absence of a genuine issue of material fact. *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 251 (11th Cir. 1997); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, that burden is not met and therefore the denial of Summary Judgement should be affirmed.

In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (U.S. 2014); citing *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 255, (1986). The "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (U.S. 2014); citing *Anderson*, 477 U. S., at 249. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012)

The trial court is not free to interpret the evidence and disbelieve Plaintiff's asserted facts. *Edwards v. Shanley, et. al.*, 666 F.3d 1289, 1293 (11th Cir. 2012) Instead, the Eleventh Circuit explicitly recognizes that a jury is free to make its own fact determination, and the Court is mindful that a jury has the opportunity to test the evidence presented by both sides in our time-honored adversarial tradition. *Id.* at 1295.

Reasonable inferences are inferences reasonably drawn from all facts then before the Court, after sifting through the universe of all possible inferences the facts could support. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Reasonable inferences are not necessarily more probable or likely than other inferences that might tilt in the moving party's favor. *Id.* Instead, so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, *the jury is entitled to decide* which inference to believe, and summary judgment is not appropriate. *Id.* If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. *Diane Hope v. Taylor*, No. 8:20-CV-196-VMC-AAS, 2021 WL 694177, at *4 (M.D. Fla. Feb. 23, 2021), citing *Samples ex rel. Samples v. City of Atlanta*, 846

F.2d 1328, 1330 (11th Cir. 1988) (citing *Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988)). Here, a reasonable inference can be made that Officer Kremler intentionally used deadly force against Mr. Weems. A review of the dash camera video establishes a clear jury question.

### a. Disputes Exist Whether Officer Kremler Intentionally Struck Mr. Weems

A disputed fact exists as to whether Officer Kremler intentionally struck Mr. Weems or if it was a mere accident. "[I]ntent or state of mind is a jury question that, in most instances, cannot be ascertained by direct evidence...." *Rozzelle v. Sec'y, Fla. Dep't of Corr.,* 672 F.3d 1000, 1020 (11th Cir. 2012) citing *State v. Stenza,* 453 So.2d 169, 171 (Fla. 2d DCA 1984).

It is Officer Kremler's position that he did not intentionally run into Mr. Weems. (Doc 36-1, 17:11-15) Mr. Weems struck his car and Officer Kremler did not strike Mr. Weems. (Doc 36-1, 17:7-8) Officer Kremler claims that he lost sight of Mr. Weems in the parking lot prior to contact as a result of his A pillar and computer in his police cruiser. (Doc 36-1, 64:4-8, 68-69:15-7) According to Officer Kremler, his last site of Mr. Weems is depicted at 20:28:00 in the video. (Doc 36-1, 64:1-8) The fact that Officer Kremler contends he did not strike Weems intentionally, is a fact from which the jury could conclude there was no reasonable basis to believe Weems was perceived to be a threat. Therefore, it is material.

In the context of cases involving video evidence, the Court must accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts. *Pourmoghani–Esfahani v. Gee,* 625 F.3d 1313, 1315 (11th Cir.2010) (per curiam) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007))

Here the video tells a different story. At 20:28:00 Officer Kremler is turning towards the left as Mr. Weems is seen running in the parking lot almost directly in front of Officer Kremler's vehicle. At 20:28:01, Mr. Weems pivots to travel to the right, Officer Kremler makes an immediate and sudden turn to the right, exactly where he knows Mr. Weems is located, striking Mr. Weems resulting in his eventual death,

While Officer Kremler testified he did not see Mr. Weems on his right, the video contradicts this assertion. It is clear Officer Kremler can see Mr. Weems turn to the right in the video. Lt. Thiel, TPD's lead trainer, does not agree that an officer's computer could be an obstruction within the police cruiser. (Doc 39-1, 71:3-25) He specifically testified the laptop tray is designed to be adjusted, lowered, raised, left, right, up, down so it does not obstruct the view of officers. (Doc 39-1, 71:3-25)

Further, the safety of the citizens is of utmost importance when driving the police cruiser. (Doc 36-4, 15:4-7; Depo of DeSimone, 20:2-4)) Tampa Police

15

Department standard operating procedure 386 states, "[t]he department recognizes its responsibility in apprehending offenders, but it's also aware that accidents are more likely to occur during police pursuits or other emergency vehicle operation. Therefore, it is paramount in importance that the need to immediately apprehend a fleeing suspect be weighed against the danger to the community and the officer before commencing or continuing a flee pursuit." (Doc 39-1, 53-54: 19-11) Officer Kremler had a duty to try to not strike Mr. Weems if he could avoid it. (Doc 36-5, 78:15-18) Here, there is no doubt, Officer Kremler could have avoided the contact. All he had to do was either maintain his direction to the left and/or stop his vehicle.

Second, it would have been impossible for Mr. Weems to strike Officer Kremler's vehicle when the video clearly shows Mr. Weems turn to the right, away from Officer Kremler's vehicle just prior to contact. Therefore, Officer Kremler is seeking an interpretation of the evidence which defies summary judgment protocols. In addition, he is asking the Court to make an unreasonable inference.

Finally, Officer Kremler's immediate statement after seeing his cruiser on top of Mr. Weems was, "Well you ain't going anywhere." 20:28:13 A reasonable jury can infer from this unsympathetic statement that Officer Kremler clearly intended to use his vehicle to intentionally hit Mr. Weems.

Based on these material facts, there is a major dispute about what occurred and how it occurred. Therefore, summary judgment should be denied.

16

### b. Disputes Exist Concerning What Information Was Known to Officer Kremler Prior to the Collision About the Severity of the Crime Mr. Weems was Suspected to have Committed.

Officer Kremler provided inconsistent statements on what information he had prior to contact with Mr. Weems. First, Officer Kremler testified that he had the following information prior to contact with Mr. Weems, "MKE/stolen vehicle, occupant's armed/hold for latents." (Doc 36-1, 42-43:17-7) However, Officer Kremler did not advise the other officers of this additional information prior to contact with Mr. Weems. (Doc 36-1, 44-45:20-6) Later, Officer Kremler testified that at the time he was driving in the parking lot after Mr. Weems, he didn't think he knew that it was a home invasion robbery, he just knew that it was a robbery of some kind on the hit from NCIC and FCIC. (Doc 36-1, 75-76:16-8)

Officer Kremler argues that Mr. Weems "rammed" the car into Officer Hernandez's cruiser. However, Officer Kremler didn't remember if he had knowledge of Mr. Weems hitting Officer Hernandez's car prior to the incident. (Doc 36-1, 76-77:24-4) This portrayal is very different than the mild contact described by Officer Hernandez. (Doc 36-3, 32:14-16)

Taking the facts in the light most favorable to Appellee, Officer Kremler was not aware of the "forcible" method by which the vehicle was allegedly stolen. All Officer Kremler knew was that the vehicle was stolen. Moreover, there is no

evidence that Mr. Weems was the person involved in the armed robbery two days prior: his name is not mentioned, and his description is not noted.

### c. Disputes Exist Whether Mr. Weems Posed a Threat of Death or Serious Bodily Injury

Only Officer Kremler testified that while he didn't intend to use deadly force, it would have been justified. (Doc 36-1, 35:11-14, 65-66:14-16) He is wrong because no reasonable officer could have believed he was being threatened with death or serious bodily harm as Mr. Weems sprinted through the parking lot. Mr. Weems made no threatening gestures during his flight.

Based on what Officer Hernandez knew at the time, he did not believe it was a valid law enforcement step to try and strike Mr. Weems with the cruiser to stop flight. (Doc 36-3, 48:15-25) Hernandez was not authorized to use deadly force that night. (Doc 36-3, 77-78:23-1) He could not have pulled out his service weapon and shot Mr. Weems to stop the dangerous fleeing felon. (Doc 36-3, 78:2-5) If any Officer had grounds to potentially be in fear for his life, if would have been Officer Hernandez whose car was hit by Mr. Weems. However, his honest testimony was that he did not think Mr. Weems hit his vehicle with the intention to hurt him. (Doc 36-3, 32:14-16)

Officer Salsbury did not personally see anything to think Officer Kremler was justified in the use of deadly force. (Doc 36-4, 33:1-7)

Based on Officer DeSimone's review of Officer Kremler's dash camera video, he does not believe Officer Kremler was justified in using deadly force. (Depo of DeSimone, 18:12-14) When Officer DeSimone was presented with a hypothetical that you have an armed subject after a home invasion that is fleeing with a dark bag in his hand, he concluded an officer would not be justified in using deadly force on the suspect. (Depo of DeSimone, 44:13-25)

According to Cpl. Belmonte, under the facts and circumstances that Officer Kremler had, he would not have been authorized to just run Mr. Weems down as an apprehension method in the parking lot. (Doc 36-5, 78-79:19-25)

Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Strickland v. Norfolk S. Ry. Co*., 692 F.3d 1151 (11th Cir. 2012) The confluence of agreeing opinions from officers involved in the investigation that deadly force was not justified establishes that summary judgment should be denied.

## III.    OFFICER KREMLER IS NOT ENTITLED TO QUALIFIED IMMUNITY

In *Graham v. Connor*, 490 U.S. 386, 394 (1989), the Supreme Court set forth factors to assess the lawfulness of the amount of force used by police officers. The Graham factors include weighing the amount of force used against "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to

the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Public officials, such as police officers, acting in the course and scope of their employment are shielded from suit against them in their individual capacities if while performing discretionary acts, they commit torts and the torts do not violate a clearly established statutory or constitutional right. *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11 Cir. 2002); citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The initial burden rests with the officers to establish that they were acting within the scope of their discretionary authority. *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009); citing *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009). If the officers were acting within the scope of discretionary authority, then the burden shifts to the plaintiff to show the grant of qualified immunity is unmerited. *Oliver,* 586 F.3d at 905; citing *McCullough*, 559 F.3d at 1205. There is no dispute the Defendant, Officer Kremler, was acting within his discretionary authority when he started his pursuit. Therefore, the Appellee will show that Mr. Weems' constitutional rights were violated and that the illegality of the officer's actions are "clearly established" at the time of the incident. *Oliver*, 586 F.3d at 905; citing *Pearson v. Callahan*, 555 U.S. 223, 129 (2009).

20

### a. Officer Kremler Violated Mr. Weems' Constitutional Rights

Determining whether the force used was reasonable under the Fourth Amendment requires a careful balancing of the nature of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake. *Crosby v. Paulk*, 187 F.3d 1339, 1351 (11th Cir. 1999). In *Graham v. Connor*, 490 U.S. 386, 394 (1989), the United States Supreme Court set forth factors to be considered in assessing the lawfulness of the amount of force used by police officers. The Graham factors include: weighing the amount of force used against "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. In addressing these three factors, the Court should consider the need for the application of the force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

The Eleventh Circuit opined that we must not "mechanical[ly] appl[y] ... these factors." *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir.2010). "[I]n the end we must still slosh our way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). "[M]ore force is appropriate for a more serious offense and less force is appropriate for a less serious one." *Salvato v.*

21

*Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) citing *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir.2002).

The Court must resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts. *Edwards v. Shanley*, 2012 U.S. App. LEXIS 640 (11th Cir. 2012)(court reversed summary judgment in favor of the defendant officers in a dog bite case against Orlando Police Department where plaintiff claimed he was bitten by the police dog for 5 – 7 minutes) citing *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006). The Court must approach the facts from the plaintiff's perspective because the issues here concern not which facts the parties might be able to prove, but, rather, whether certain given facts demonstrate a violation of clearly established law. *Edwards*, citing *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009).

### i. Severity of the Crime

It is undisputed the vehicle Mr. Weems was driving was stolen, but that is about all that is undisputed with regards to the severity of the crime and the knowledge of the crime that allegedly occurred.

Officer Kremler provided inconsistent statements on what information he had prior to contact with Mr. Weems. First, Officer Kremler testified that he had the following information prior to contact with Mr. Weems, "MKE/stolen vehicle,

occupant's armed/hold for latents." (Doc 36-1, 42-43:17-7) However, Officer Kremler did not advise the other officers of this additional information prior to contact with Mr. Weems. (Doc 36-1, 44-45:20-6) Later, Officer Kremler testified that at the time he was driving in the parking lot after Mr. Weems, he didn't think he knew that it was a home invasion robbery, he just knew that it was a robbery of some kind on the hit from NCIC and FCIC. (Doc 36-1, 75-76:16-8)

The only information that Officer Hernandez had was that it was a stolen vehicle driven by an unknown person. (Doc 36-3, 32, 1-4) Officer Hernandez did not know whether the person driving the vehicle was the person who stole the vehicle, or if they even had knowledge that the vehicle was stolen. (Doc 36-3, 37:6-12) This is true for all officers involved, none of them knew the driver's status regarding the stolen vehicle. Besides for the statement, "Signal 10,"[2] Officer Salsbury had no other evidence that Mr. Weems personally participated in the vehicle theft. (Doc 36-4, 35:5-8)

Officer Kremler argues that Mr. Weems "rammed" the car into Officer Hernandez's cruiser. However, Officer Kremler didn't remember if he had knowledge of Mr. Weems hitting Officer Hernandez's car prior to the incident. (Doc 36-1, 76-77:24-4) Further, Officer Hernandez did not think Mr. Weems hit his vehicle with the intention to hurt him. (Doc 36-3, 32:14-16) He believes it was

---

[2] Signal 10 means stolen vehicle. (Doc 36-1, 43:16-17)

more along the lines of he was trying to flee. (Doc 36-3, 32:14-16) Officer Hernandez did not think there was any damage to his vehicle, or it was "very, very minor." (Doc 36-3, 33:5-9)

Officer Kremler argues that Mr. Weems committed at least two forcible felonies, armed robbery and hitting Officer Hernandez's car. However, the information the officers obtained after the incident should not be considered. At the time the deadly force was used, Officer Kremler only had information that the vehicle Mr. Weems was driving was stolen, a third-degree felony of grand theft motor vehicle, if the driver had knowledge of the stolen status of the vehicle No other crime should be considered.

### ii. Threat

Mr. Weems did not pose a threat of seriously bodily injury or death to Officer Kremler or any other officer or person when he was fleeing on foot.

Officer Kremler argues that Mr. Weems was carrying an unidentifiable object which could have been a gun. However, Officer Kremler never affirmatively identified the object in Mr. Weems' right hand as a firearm. (Doc 36-1, p. 77:5-8) The reality is that Mr. Weems did not have a gun in his possession.

The jury will have the benefit of the dashboard camera footage. The jury can view Mr. Weems' hand and the bag he was carrying. No one claims there was ever a call-out on the radio that Weems was armed or otherwise dangerous. When

Officer Hernandez saw Mr. Weems running, Officer Hernandez saw he had something in his hands, but it did not look like a firearm. (Doc 36-3, 41:16-24) Viewing this evidence in the light most favorable to Mr. Weems, a jury could determine that no reasonable officer in Kremler's position could have perceived the object in Mr. Weems' hand to have been a firearm. A reasonable jury could conclude that the object to all reasonable observers appeared to be what it was— a bag.

While at the Family Dollar, Officer Salsbury never saw Mr. Weems reach for firearm or make any movements inside his car that appeared as if he was reaching for a weapon. (Doc 36-4, 18-19:17-1) Officer Salsbury never saw Mr. Weems with a firearm in his hand, never saw him point a firearm, never heard him verbally threaten her or anyone else that was present or do anything threatening with his hands. (Doc 36-4, 26-27:7-1, 35:13-24) Officer Salsbury was never in fear of death or bodily harm. (Doc 36-4, 27:7-10) Officer Salsbury never saw Mr. Weems make any movements while he was running to make her think that he was going to either come after her or any other officer present. (Doc 36-4, 37:2-8)

Officer DeSimone never saw Mr. Weems with a firearm in his hand or point a firearm[3]. (Depo of DeSimone, 28-29:21-10) Furthermore, Mr. Weems never

---

[3] Officer DeSimone was about 40 to 50 feet away from Mr. Weems during the foot chase. (Doc 40-1, 28:5-8)

verbally threaten him, or did anything threatening with his hands. *Id.* Officer DeSimone was never in fear of death or bodily injury. (Doc 40-1, 29:14-16)

Based on the totality of the facts, Mr. Weems did not present a threat when he was fleeing the officers.

### iii.  Resisting or Evading Arrest

There is no dispute that Mr. Weems was fleeing the officers. However, Officer Kremler never gave voice commands to stop fleeing. (Doc 36-1, 62:3-5)

In considering an excessive-force case, a court should determine whether an officer's conduct in making an arrest is objectively reasonable or if it is an over-reactive, disproportionate action for the situation relative to the response of the apprehended person. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1317 (11th Cir. 2017) The latter situation is the sort of unconstitutional conduct that deprives an officer of qualified-immunity protection in an obvious-clarity case. *Id.* Courts must examine "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily [or psychological] harm to the suspect against the gravity of the threat the officer sought to eliminate." *Id.* at 1318 citing *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)).

Appellee retained police practice expert Dr. Geoffrey Alpert to review the case. Dr. Alpert's opinions are based on 30 years of involvement in law

enforcement in various capacities as a criminologist, researcher, consultant, auditor, evaluator and trainer. (Doc 35-1, 1) He opined that Officer Kremler striking Mr. Weems with his vehicle was a disproportionate use of force given the totality of the circumstances. (Doc 35-1, 4) During the parking lot pursuit, Mr. Weems was not a threat to the officer or anyone else. (Doc 35-1, 4) Mr. Weems had not committed a violent crime in Officer Kremler's presence and Mr. Weems was only attempting to flee. (Doc 35-1, 4) Mr. Weems did not create a well-founded fear that he would cause serious bodily injury to Officer Kremler or his fellow officers.  (Doc 35-1, 4) Officer Kremler unreasonably seized Mr. Weems by driving into him without properly assessing the totality of the circumstances. (Doc 35-1, 4) Officer Kremler, by chasing Mr. Weems in the manner he did, exhibited the use of unreasonable and unnecessary force. (Doc 35-1, 4)   Inferences from the totality of testimony in the record heavily favor Appellee's version of the facts.

In addressing the *Graham* factors, it is clear the amount of force was unnecessary and excessive. Viewing the facts in the light most favorable to the Appellee, at the time of the contact, all Officer Kremler knew was that he was joining the chase of an unarmed individual who had been previously driving in a stolen vehicle. The use of deadly force to seize Mr. Weems by striking him with a vehicle (driving approximately 17 miles per hour, when viewed in the light most favorable to the Appellee) in those circumstances could be found by a reasonable

27

jury to have been objectively unreasonable and excessive. The overarching governing principle of the use of force is that force must regardless of the three factors be proportional to the need for that specific use of force. Everyone agrees the use of the police cruiser to hit a suspect is deadly force. (Doc 36-1, 35:15-23, Doc 36-3, 77:19-22, Doc 36-4, 13:20-22, Doc 39-1, 26:4-7, Doc 36-5, 25:6-10, Depo of Evan DeSimone; 15:13-18) Here the use of deadly force, when Mr. Weems did not pose a threat of death or seriously bodily injury, was excessive.[4]Therefore, summary judgment should be denied.

### b.  The Illegality of Officer Kremler's Actions Was "Clearly Established" at the time of the Incident

The doctrine of qualified immunity protects public officials from monetary liability when their conduct does not violate "clearly established" law.   To overcome the defense of qualified immunity, a plaintiff must show that officials had fair warning of what the law required.  One way to show 'fair warning' is by pointing to a prior case with similar facts, but that is not the only way to do so. *See, e.g., United States v. Lanier*, 520 U.S. 259, 271 (1997) (recognizing that a general constitutional rule may apply with "obvious clarity to the specific conduct in question," even though the challenged conduct has not previously been held unlawful); *see also Hope v. Pelzer*, 122 S. Ct. 2508 (2002).  "The relevant,

---

[4] See below discuss regarding *Garner v. Tennessee*.

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hope* at 2156. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). All that is required is that "in the light of pre-existing law, the unlawfulness must be apparent." *Id.*

Plaintiff may demonstrate that the law was "clearly established" with regard to a particular issue in one of three ways. First, he may show that the circumstances surrounding the violation of his rights are substantially similar to the factual situation in a previous case. *See Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Second, a plaintiff may demonstrate "that a broader, clearly established principle should control the novel facts in [his or her] situation." *Id.* (citing *Hope,* 536 U.S. at 741). *See also Marsh v. Butler County*, 268 F.3d 1014, 1031 n. 9 (11th Cir. 2001) (en banc) ("preexisting case law, tied to the precise facts, is not in every case essential"). Finally, a plaintiff may show that an official's conduct so obviously violated the Constitution that the non-existence of prior law on point is unnecessary. *See id.* (citing *Lee v. Ferraro,* 284 F.3d 1188, 1199 (11th Cir. 2002)). The Supreme Court's "decisions [have not] demanded precedents that applied the

right at issue to a factual situation that is 'fundamentally similar'" to the case at bar to give government officials fair warning that their conduct contravenes constitutional rights. *United States v. Lanier,* 520 US. 259 (1997).

Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The " 'salient question' ... is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) quoting *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope*, 536 U.S. at 741, 122 S. Ct. at 2516). "Because identifying factually similar cases may be difficult in the excessive force context," *Lee v. Ferraro*, 284 F.3d 1188, 1198–99 (11th Cir. 2002), we may find fair warning in the law without also finding a factually identical case. *Corbitt* at 1312. Whether the law is "clearly established" requires the Court to "assess whether the facts of the instant case fall within statements of *general principle* from our precedents." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (emphasis supplied). see also *Hope v. Pelzer*, 122 S. Ct. 2508 (2002)

Case law from the Supreme Court and this circuit clearly establishes that it is not reasonable for a police officer to use deadly force against an unarmed and non-dangerous man. *Mighty v. Miami-Dade Cty.*, 728 F. App'x 974, 979 (11th Cir.

2018) citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) ("[U]nprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment."); *McKinney v. DeKalb Cty., Ga.*, 997 F.2d 1440, 1443 (11th Cir. 1993) (denying qualified immunity to an officer who shot an individual who was merely shifting positions, had already put down the knife that he was previously holding, and was not threatening the safety of others). *Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir. 1987) (concluding that police officers violated the Fourth Amendment when they "were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather . . .without provocation shot at a nondangerous suspect"); *Ayers v. Harrison*, 650 F.App'x 709 (11thCir 2016) (Even in cases where a suspect engages in a struggle, police officers are still required to properly assess whether the suspect is a genuine threat based on the information available to them at the time.) *Salvato v. Miley,* 790 F.3d 1286 (11th Cir. 2015)(Plaintiff was retreating, apparently unarmed, and outside of striking distance. Officer had no reason to believe Plaintiff was a danger to the general public, and if Officer's fear was that Plaintiff would escape, her use of deadly force was clearly unreasonable.) *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir. 1985)(intoxicated suspect had a near-

31

collision with a van, driver called the police and reported that the suspect had threatened him with a gun. The suspect initially resisted by attempting to flee and flailing his arms, but was unsuccessful because of his drunken condition. The police officers began "beating him about the head." Due to the suspect's small size, intoxicated state, and lack of a weapon, the Court determined that he posed little threat to the officers.)

In *Gaillard v. Commins*, 562 F. App'x 870, 872–77 (11th Cir. 2014) Plaintiff alleged that the Officer intentionally struck the unarmed Plaintiff with his police vehicle to effect an arrest. The Officer argued that he did not intentionally strike Plaintiff with his police vehicle.  Instead, he contended the collision was an accident and thus not a seizure for purposes of the Fourth Amendment. Viewed in the light most favorable to Plaintiff, however, the record, which included a video taken from the officer's police vehicle, supported factual findings that the officer (1) intentionally turned and accelerated his car directly towards the unarmed Plaintiff and (2) intentionally struck Plaintiff with the vehicle in an effort to stop Plaintiff's flight and to make an arrest. The Court found a jury could therefore conclude that Officer's action was objectively unreasonable under the circumstances.

The *Gaillard* Court relied on *Tennessee v. Garner*, 471 U.S. 1 (1985), when analyzing the clearly established prong. In *Garner*, the Supreme Court explicitly

addressed "the constitutionality of the use of deadly force to prevent the escape of an apparently unarmed suspected felon" fleeing on foot. *Id.* at 3. The Supreme Court concluded that "such force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id. Garner* clearly established the law for the use of deadly force in the pursuit of an unarmed suspected felon fleeing on foot. *See* 471 U.S. at 21.

The Court concluded that viewed in the light most favorable to Plaintiff, the facts in *Gaillard* were materially similar to *Garner:* Officer realized that the vehicle chase was over and that Plaintiff was an unarmed suspected felon fleeing on foot. In that scenario, *Garner* clearly put Officer on notice that the use of deadly force would be objectively unreasonable unless he had "probable cause to believe that Plaintiff pose[d] a significant threat of death or serious physical injury to Officer or others." 471 U.S. at 3. *Garner* thus served as clearly established law for *Gaillard*. Therefore, the Court affirmed the District Court's denial of summary judgment.

Like *Gaillard*, *Garner* also served as clearly established law for Officer Kremler. Mr. Weems was an unarmed fleeing felon who did not pose a significant threat of death or serious physical injury to the Officers or others. Officer Kremler never affirmatively identified the object in Mr. Weems right hand as a firearm.

(Doc 36-1, p. 77:5-8) The only information that Officer Kremler had regarding a firearm is that the suspect who stole the vehicle Mr. Weems was driving may be armed. Officer Kremler had no information that Mr. Weems was in fact the person who stole the vehicle. Therefore, the liquor bag he was carrying did not present a threat or potential threat.

In *Vaughan v. Cox*, 343 F.3d 1323, 1329–33 (11th Cir. 2003) when the Deputy discharged his weapon hitting Plaintiff, he faced two suspects who were evading arrest and who had accelerated to eighty to eighty-five miles per hour in a seventy-miles-per-hour zone in an attempt to avoid capture. The Court found under such facts, a reasonable jury could find that Plaintiff's escape did not present an immediate threat of serious harm to Deputy or others on the road.

The Court reasoned, taking the facts as alleged by Plaintiff, an objectively reasonable officer in Deputy's position could not have believed that he was entitled to use deadly force to apprehend Plaintiff. The Court in applying *Garner* concluded a reasonable officer would have known that firing into the cabin of a pickup truck, traveling at approximately 80 miles per hour on Interstate 85 in the morning, would transform the risk of an accident on the highway into a virtual certainty. The facts of the case bore out these foreseeable consequences. Thus, the deputy was not entitled to summary judgment, on

qualified immunity grounds, regarding Plaintiff's § 1983 claim predicated on the Fourth Amendment. *Vaughan v. Cox*, 343 F.3d 1323, 1329–33 (11th Cir. 2003)

Like *Vaughan*, the mere action of fleeing an arrest did not give Deputy Kremler the right to use deadly force on Mr. Weems who did not present a threat of death or seriously bodily injury when he fled on foot.

In *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1326 (11th Cir. Fla. 2015), the deputies arrived at the residence, Plaintiff's father informed them that his son was agitated, had threatened suicide, and might have a gun. With guns drawn, the Defendants approached the bedroom without calling out or identifying themselves. *Id.* They encountered Plaintiff as he was sitting on a bed and "looking down at a shotgun that lay loosely in his lap," when Defendant fired two rounds at Plaintiff, hitting him and knocking him to the floor. *Id.* at 1326-1327. As Plaintiff laid bleeding and critically injured, the Defendant tasered him. *Id.* at 1327. The Plaintiff alleged that "[a]t no point did Plaintiff ever raise the shotgun from his lap or point it in the direction of the Deputies." *Id.*

The Court held that construing the allegations in the light most favorable to the plaintiff, as they are required to do, count one alleges that Defendant shot Plaintiff without warning when he was not posing a threat to the deputies or anyone else; that while he was on the ground bleeding from the gunshot wound and not offering any resistance or threat, Defendant tasered Plaintiff; and, that

while he was on the ground seriously injured by both the shooting and the tasering and not offering any resistance or threat, both deputies beat him without cause. The Court concluded that Plaintiff alleged an excessive force claim upon which relief could be granted against both Defendants. *Id.*

Like *Weiland*, Officer Kremler ran over Mr. Weems without warning or commands to stop, when Mr. Weems was not posing a threat to the Officers or anyone else. Unlike *Weiland* though, Mr. Weems did not have a weapon in his possession and therefore was even less of a threat when deadly force was used on him. The mere fact that Officer Kremler ***thought*** Mr. Weems may have a gun does not give him authority to use deadly force when no weapon is presented in a threatening manner. Officer Kremler has never suggested that Mr. Weems performed any act that looked like a weapon was being wielded against him.

In *Mercado*, the Plaintiff was holding the knife in both hands and pointing it toward his heart. *Mercado v. City of Orlando*, 407 F.3d 1152, 1154 (11th Cir. 2005). The officers identified themselves and ordered Mercado to drop his knife at least two times, but he refused without making any threatening moves toward the officers. *Id.* Fifteen to thirty seconds after giving that order, the officer hit Mercado in the head with a Sage SL6 Launcher, fracturing his skull, causing brain injuries. *Id.* at 1155.

The Court found that all of the factors articulated in *Graham* weighed in

favor of Mercado. *Id.* at 1157. The Court reasoned that he was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was shot in the head, and therefore if the Officer aimed for Mercado's head, he used excessive force when apprehending Mercado. *Id.* at 1157-1158.

Like *Mercado*, mere noncompliance, that does not cause a threat, does not make the use of deadly force reasonable. The mere possibility of a firearm, or said differently, the fear a firearm could be present does not escalate every scenario to one in which officers maintain the privilege of using deadly force at their discretion.

Defendant relies on *Haynes v. Richmond Cty. Sheriff Off.*, 749 F. App'x 935, 940 (11th Cir. 2018) which is distinguishable from the case at hand. The *Haynes* court found it would not have been clear to a reasonable officer in Defendant's position that Plaintiff was unarmed and nondangerous. Specifically, the Court relied on the following facts: Defendant heard people shouting that Plaintiff had a firearm, Plaintiff jumped in a car, ignoring Defendant's calls to stop, and accelerated the car in Defendant's direction coming within a few feet of hitting him. The Court concluded a reasonable officer in Defendant's position could have concluded, particularly in the context of the "tense, uncertain, and rapidly evolving" situation, that Plaintiff was armed and posed a threat of immediate harm. Therefore, "in the specific set of circumstances at issue," it would not have been

clear to a reasonable officer in Defendant's position that *Garner* prohibited using the patrol car to stop Plaintiff's flight. *Haynes v. Richmond Cty. Sheriff Off.*, 749 F. App'x 935, 940 (11th Cir. 2018)

However, in the present case, the only information that Officer Kremler had regarding a firearm is that the suspect who stole the vehicle Mr. Weems was driving may have been armed. Officer Kremler had no information that Mr. Weems was in fact the person who stole the vehicle. Officer Kremler never affirmatively identified the object in Mr. Weems right hand as a firearm. (Doc 36-1, p. 77:5-8) In fact, Mr. Weems did not have a firearm on his skull smashed body.

A second critical difference is Mr. Weems never presented a threat to Officer Kremler when he was in his vehicle. While Officer Kremler now wants to argue Mr. Weems "rammed" Officer Hernandez's police cruiser, Officer Kremler doesn't remember if he had knowledge of Mr. Weems hitting Officer Hernandez's car prior to the incident. (Doc 36-1, 76-77:24-4) Therefore, he can't now argue that he was threatened by this out-of-his-presence event and while Weems was on foot. Further, Officer Hernandez did not think Mr. Weems hit his vehicle with the intention to hurt him. (Doc 36-3, 32:14-16) He believes it was more along the lines of he was trying to flee. (Doc 36-3, 32:14-16) Officer Hernandez did not think there was any damage to his vehicle, or it was "very, very minor." (Doc 36-3, 33:5-9) Based on these two critical differences from *Haynes*, the Court must conclude

Mr. Weems did not present a threat of immediate harm and therefore the use of deadly force was excessive.

An officer cannot, without the requisite threat of immediate harm, use deadly force against an unarmed robbery suspect fleeing from law enforcement solely to prevent flight. See *Garner*, 471 U.S. at 11 ("It is not better that all felony suspects die than that they escape."). It would have been clear to a reasonable officer in Officer Kremler's position that deadly force was not available to prevent Mr. Weems from fleeing.

## IV. OFFICER KREMLER IS LIABLE FOR THE WRONGFUL DEATH OF MR. WEEMS UNDER STATE LAW

Officers are individually liable for torts committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Fla. Stat. § 768.28(9)(a). In Florida law, a "battery" claim against a duly sworn law enforcement officer is equivalent to a federal claim for excessive force. Therefore, the analysis of a battery claim is analyzed exactly like a § 1983 excessive force claim and the question is whether the amount of force used was reasonable under the circumstances. *City of Miami v. Sanders,* 672 So.2d 46 (Fla. 3rd DCA 1996).

A reasonable jury could find that Officer Kremler's actions were committed with bad faith or with malicious purpose or in a manner exhibiting wanton and

willful disregard of human rights, safety, or property. Here a reasonable jury could conclude that Officer Kremler used deadly force by intentionally running over Mr. Weems who was not threatening serious bodily injury or death on anyone. Officer Kremler's immediate and egregious statement after seeing his cruiser on top of Mr. Weems was, "Well you ain't going anywhere." 20:28:13 A reasonable jury could infer from this unsympathetic statement that Officer Kremler clearly intended to use his vehicle to intentionally hit Mr. Weems in bad faith and with malicious purpose.

A jury could find these actions to be committed with bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Therefore, summary judgment should be denied.

## <u>CONCLUSION</u>

Based on the aforementioned reasons, the Court should deny this appeal for lack of jurisdiction or alternatively affirm the District Court's Order denying Appellant's Motion for Summary Judgment.

Respectfully Submitted,

*s/Michael P. Maddux*_____
Michael P. Maddux, Esquire
Florida Bar Number: 0964212
Attorney for Appellee
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 33606
Phone: (813) 253 - 3363
Facsimile: (813) 253 - 2553
E-Mail: mmaddux@madduxattorneys.com
Jszymczak@madduxattorneys.com

## **Certificate of Compliance With Rule 32(A)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,678 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 Word in 14 point Times New Roman.

Respectfully Submitted,

*s/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar Number: 0964212
Attorney for Appellee
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 33606
Phone: (813) 253 - 3363
Facsimile: (813) 253 - 2553
E-Mail: mmaddux@madduxattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the original and four copies of the foregoing petition with the Clerk of Court via CM/ECF and regular mail on the 7th day of August, 2023, to Douglas J. Mincher, Clerk of Court, U.S. Court of Appeal for the Eleventh Circuit, 56 Forsyth Street N.W., Atlanta, GA 30303.

I further certify that I have served a true and correct copy of the foregoing petition via CM/ECF on this 7th day of August, 2023, upon Andrew Dayes, Esquire.

*s/Michael P. Maddux*_____
Michael P. Maddux
Attorney for Appellee